UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
GLASSALUM INTERNATIONAL
CORPORATION,                        :

                 Plaintiff,         :
                                                        **OPINION**
        - against -                 :
                                               03 Civ. 9166 (DC)
ALBANY INSURANCE COMPANY,           :

                 Defendant.         :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**   BIEDERMANN, HOENIG, MASSAMILLO & RUFF, P.C.
                   Attorneys for Plaintiff
                        By:  Deborah Elsasser, Esq.
                             Leslie F. Ruff, Esq.
                   90 Park Avenue
                   New York, New York  10016

                   MOUND COTTON WOLLAN & GREENGRASS
                   Attorneys for Defendant
                        By:  Frederic R. Mindlin, Esq.
                             Renee M. Plessner, Esq.
                   One Battery Park Plaza
                   New York, New York  10004

**CHIN, D.J.**

          In this diversity case, plaintiff Glassalum

International Corporation ("Glassalum") seeks a declaratory

judgment that defendant Albany Insurance Company ("Albany") is

obligated under an insurance policy to reimburse Glassalum for

property damage from Hurricane Irene to certain curtain wall

panels.  Glassalum also seeks relief under the doctrines of

unjust enrichment and reformation.  Before the Court are cross-

motions for summary judgment pursuant to Fed. R. Civ. P. 56.  For

the reasons that follow, both motions are granted in part and

denied in part.

## STATEMENT OF THE CASE

## A.   The Facts

The facts are drawn from the pleadings, various affidavits and depositions, and the parties' Rule 56.1 statements.  They are largely undisputed and are summarized as follows:

### 1.   The Tishman Contract

Glassalum is a Florida corporation ith its principal place of business in Florida.  (Def.'s 56.1 Statement ¶ 2).[1] Glassalum manufactures and installs glass curtain wall panels, primarily in high-rise commercial and residential buildings. (Id.).  On or about December 16, 1998, Glassalum entered into a contract (the "Tishman Contract") with 3 Times Square Associates, LLC ("3 Times Square"), for the manufacture and installation of curtain wall panels for a construction project called "3 Times Square, New York, NY" (the "Project").  (See Tishman Contract at 1).

The Tishman Contract provided, inter alia, that immediately upon the purchase by Glassalum of any materials to be used in the construction of the Project, the materials became the property of 3 Times Square.  (Id. at 13-14).  The Tishman Contract also provided that 3 Times Square was required to procure insurance naming itself, its agents, the construction

---

[1]     Where one party's 56.1 Statement is cited, the other side has not disputed the facts alleged.

manager, Glassalum, and any sub-contractors as insured. (Id., Rider C at 1). Rider F to the Tishman Contract required Glassalum to store materials for the Project at a location designated by 3 Times Square's construction manager, Tishman. (Id., Rider F at 17). The form lease attached to Rider F required Tishman to use the premises for no purpose other than the storage and removal of materials fabricated in connection with the construction of the improvements for the Project. (Id., Schedule 1 to Rider F). The Tishman Contract also required Glassalum to procure insurance to cover, among other things, its property and materials used in connection with the Project. (Id. at 5).

### 2. Damage From Hurricane Irene

On or about October 15, 1999, Hurricane Irene caused flooding in Glassalum's storage yard in Miami, Florida. (Anderson Dep. at 76). The flooding caused damage to certain curtain wall panels destined for the Project in New York. (Id. at 84). These panels were to be a permanent part of the Project, and were being held in temporary storage at Glassalum's Miami facility. (Def.'s 56.1 Statement ¶ 12). Glassalum's practice was to store completed materials at its premises until there was space available at the structure in New York. (Id. ¶ 10). Specifically, water damage from Hurricane Irene degraded the insulation to the point that it needed to be replaced. (Anderson Dep. at 84). Although it would have been less expensive to repair the wall panels in Florida, Glassalum shipped the damaged

wall panels to the Project site in New York where they were inspected and repaired. (Def.'s 56.1 Statement ¶ 11). This decision was made based on available staffing, space, and the level of production at the Glassalum facility. (Anderson Dep. at 86-87).

### 3.   **The Albany Policy**

Glassalum timely submitted a notice of claim to its insurance company, Albany (a New York corporation licensed to do business in New York), for coverage under a Commercial Output Policy (the "Albany Policy").[2]  (Pl.'s 56.1 Statement ¶ 3; Ruff Aff. Ex. E; Compl. ¶ 2).  Glassalum procured the Albany Policy for the purpose of insuring its "materials in storage . . . and other locations as may be required." (Ruff Aff. Ex. A).  The Albany Policy was effective from November 5, 1997 to January 5, 2000, and provided $12 million coverage to Glassalum for, <u>inter alia</u>, personal property, temporary storage, property in care, custody and control, and installation and fabrication. (<u>Id.</u> at A0609).

The Albany Policy included a section entitled "Property Not Covered." (<u>Id.</u> at A0634).  This section included among other things, exclusions for airborne or waterborne property, animals,

---

[2]     A commercial output policy provides coverage for commercial property and inland marine in a single form, apparently reducing the potential for coverage gaps that could occur in policies that cover commercial property and have inland marine "floaters" attached.  <u>See</u> Robert J. Prahl, <u>Outlook Policies -- a Good Fit for Large Accounts</u>, American Association of Insurance Services, available at http://www.aaisonline.com/.

crops, exports and imports, and money and securities. (Id.).
Paragraph 10 of the "Property Not Covered" section is entitled
"Property More Specifically Insured" and states: "'We' do not
cover property which is more specifically insured in whole or in
part by any other insurance. 'We' do cover the amount in excess
of the amount due from the more specific insurance." (Id.). The
"Property More Specifically Insured" provision of the Albany
Policy was a pre-printed American Association of Insurance
Services form that was not altered in any way for Glassalum.
(Pilea Dep. at 13-15).

### 4. Albany's Investigation

After receiving Glassalum's claim for damages, Albany
assigned a claim manager, Kathy Finkenor, to investigate and
evaluate the claim. (Def.'s 56.1 Statement ¶ 14). Finkenor
assigned an independent adjuster, GAB Services ("GAB"), to
investigate Glassalum's claim of loss. (Id.). During the course
of GAB's investigation, it learned that 3 Times Square had a
builder's risk insurance policy (the "American Home Policy")
issued by American Home Assurance Company ("American Home").
(Finkenor Dep. at 37-39; Def.'s 56.1 Statement Ex. 8). The
American Home Policy insured "all materials, equipment, machinery
and supplies of any nature whatsoever, to be used in . . . [the]
completion of the Project." (Def.'s 56.1 Statement Ex. 8 at 4).

After reviewing the American Home and Albany Policies,
Finkenor determined that the "Property More Specifically Insured"
provision of the Albany Policy applied to Glassalum's claim.

(Id. ¶ 16).  Albany's claim personnel would generally look at

several factors associated with the risk and loss, such as where

and how the loss occurred, to determine whether other insurance

applied more specifically to the facts of a particular claim.

(Id. ¶ 22).  Finkenor testified about her understanding  of the

"Property More Specifically Insured Provision":

> A:   I [am] going to reference it in relation
>      to a loss.  More specific pertains to
>      location, to a particular location, and
>      that would be under the Guiding
>      Principles of Insurance.
>
> Q:   When you say location, you mean the
>      location of the property [being
>      insured]?
>
>                    . . .
>
> A:   [N]o, the location -- the property going
>      to a specific location rather than many
>      locations . . . . I [am] referring to
>      covered property that is more
>      particularly insured under another
>      policy, more specifically insured
>      meaning that another policy intends for
>      that property to go to one location.
>      That is the definition that I am under
>      the understanding more specifically
>      insured refers to rather than a blanket
>      policy.
>
>                    . . .
>
> Q:   [W]hat does more specific mean?  You
>      told me location, is there anything else
>      that it means?
>
> A:   Property more specifically insured, I do
>      [not] have an answer.  I [am] not sure.

(Finkenor Dep. 46-48).  Another witness from Liberty

International Underwriters, the company that took over Albany's

business, testified that when considering whether property is

more specifically insured, Albany "would look at the factors associated with risk and of the loss . . . such as where it took place, how it took place, and almost every aspect of the claim and risk . . . . [Albany] would look at all the events of a loss and determine what coverage is applied to those areas." (Tsagaris Dep. at 54-56).

As Finkenor determined that the American Home Policy "more specifically insured" Glassalum's claims, she denied coverage to Glassalum in a letter dated May 15, 2000. (Def.'s 56.1 Statement Ex. 9). Finkenor's letter stated, in part, that

> At the time of the loss, the property for which claim is being made was being stored on property leased to [3 Times Square], and was designated to become a permanent part of the Project. Such property was, therefore, clearly covered under the American Home Policy [and] . . . the loss and damage should be paid by the American Home Policy and not the Albany Policy . . . . Thus, [the Albany Policy] only responds to this loss on an excess basis.

(Id.). Finkenor recommended that Glassalum submit a claim under the American Home Policy. (Id.).

### 5.   **Glassalum Submits Its Claim to American Home**

After Glassalum's claim was denied by Albany, it submitted a claim under the American Home Policy. (Id. ¶ 25). American Home assigned Andrew Korf, a complex director who handled large claims, to investigate the claim. (Id.). Korf reviewed the American Home Policy and determined that Glassalum was not insured under the policy. (Id. ¶ 26). Apparently, 3 Times Square did not name Glassalum as an insured on the American

Home Policy as required under the Tishman Contract.  (<u>See</u> Tishman
Contract, Rider C at 1).  Korf sent a denial letter to Glassalum
on July 17, 2000, stating that "we have concluded that Glassalum
is not insured under the American Home Policy and is not entitled
to coverage for the claim."  (<u>Id.</u> Ex. 14).

Glassalum provided Albany with a copy of the denial
letter from American Home.  (<u>Id.</u> ¶ 27).  After receiving Korf's
denial letter, Finkenor responded by letter on behalf of Albany,
concluding that

> Albany disputes American Home's denial and
> suggests American Home reconsider its
> position . . . . The fact that Glassalum is
> not an additional insured under the American
> Home Policy is irrelevant.  The only logical
> conclusion that can be drawn is that the
> curtain walls are covered property that were
> damaged as the result of a covered peril
> under the American Home Policy.

(<u>Id.</u> Ex. 15).

### 6.  <u>3 Times Square Submits a Claim to American Home</u>

After American Home denied Glassalum's claim, 3 Times
Square submitted a claim under the American Home Policy for the
damage to the curtain wall panels.  (<u>Id.</u> ¶ 28).  Korf analyzed 3
Times Square's claim and concluded that the American Home Policy
covered the loss.  (<u>Id.</u>).  Korf determined that at the time of
the loss, 3 Times Square had paid for the property and had an
insurable interest in the property.  (<u>Id.</u> ¶ 29).  Thus, based on
the language in the American Home Policy that provided coverage
for property held in temporary storage at locations other than at
the construction site, and specifically designated to become part

of the Project, Korf determined that the loss was covered under the American Home Policy.  (Id. ¶ 30).  American Home paid 3 Times Square more than $1 million for the damaged curtain wall panels.  (Id. ¶ 28).

       **7.**   **The Guiding Principles of Insurance**

      In 1963, the insurance industry established "Guiding Principles for Overlapping Insurance Coverages" (the "Guiding Principles") to "eliminate" disputes arising in "the adjustment and apportionment of losses and claims because of overlapping coverages."  (See Ruff Aff. Ex. P at ii).  These Guiding Principles are relevant to the issue of the parties' reasonable expectations because they reflect industry practice and understanding.  See Monarch Cortland v. Columbia Casualty Co., 626 N.Y.S.2d 426, 431 (Sup. Ct. 1995) ("[T]he court employs the [Guiding Principles for Insurers of Primary & Excess Coverage] as an indication of a practice or a goal of the insurance industry."), aff'd as modified, 646 N.Y.S.2d 904 (3d Dep't 1996).  Moreover, here, Albany specifically relied on the Guiding Principles in considering Glassalum's claim.  (Finkenor Dep. at 46).

              The relevant Guiding Principle states that

              Insurance covering a specifically described
              article or object . . . at a designated
              location shall be primary to any other
              insurance.

              As between insurances without designation of
              location and not specific as to an article or
              object or as to group or class of related
              articles or objects, the policy for the more

> limited purpose (other than peril) to which
> the insurance applies shall be primary.

(Id. at 1).  The Guiding Principles also state that "[t]he application of these principles shall in no event operate to reduce recovery to the insured below that which would have been obtained under any policy or policies covering the risk."  (Id. at iii).

### 8.   **The American Home v. Glassalum Action**

After American Home paid 3 Times Square's claim, it commenced a subrogation action against Glassalum in this Court based on Glassalum's alleged negligence and breach of contract. See American Home Assurance Co. v. Glassalum Int'l Corp., 02 Civ. 613 (DC) (S.D.N.Y.).  After completion of discovery, the action was settled on or about March 4, 2004, for $725,000.  (Def.'s 56.1 Statement Ex. 17).

## B.   **Procedural History**

Glassalum filed a complaint in this action on November 19, 2003, seeking a declaratory judgment that Albany is obligated under the Albany Policy to pay Glassalum's claim, and that under the doctrines of unjust enrichment and contract reformation Albany should pay the claim.  The parties completed discovery. On March 4 and 7, 2005, respectively, Glassalum and Albany filed cross-motions for summary judgment.

**DISCUSSION**

A.  **Choice of Law**

        In analyzing the choice of law question in a diversity
case, a federal court applies the law of the forum state.  Cap
Gemini Ernst & Young, U.S., LLC v. Nackel, 346 F.3d 360, 365 (2d
Cir. 2003); Tri-State Employment Servs., Inc. v. Mountbatten Sur.
Co., 295 F.3d 256, 261 (2d Cir. 2002); Campbell v. Metropolitan
Prop. & Cas. Ins. Co., 239 F.3d 179, 186 (2d Cir. 2001).  In
contract cases, New York courts apply a "center of gravity" or
"grouping of the contacts" test and consider "a variety of
significant contacts, including the place of contracting, the
places of negotiation and performance, and the domicile or
business of the contracting parties."  Tri-State Employment, 295
F.3d at 260-61 (citing In re Allstate Ins. Co. and Stolarz, 597
N.Y.S.2d 904, 912 (1993)); Lazard Freres & Co. v. Protective Life
Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997); Brink's Ltd. v.
South African Airways, 93 F.3d 1022, 1030-31 (2d Cir. 1996).

        Here, the most significant contacts are in New York.
The Albany Policy was negotiated and issued in New York.
Albany's principal place of business is in New York.  While the
insured, Glassalum, is a Florida corporation and the damage to
the curtain wall panels occurred in Florida, they were
manufactured for the Project in New York.  In addition, Glassalum
shipped the damaged panels to New York for inspection and
replacement.  The contacts most significant to this insurance

case are New York contacts and New York has the greatest interest
in the outcome of this action.

Accordingly, New York and not Florida law applies.[3]

B.  **Applicable Law**

1.  **Summary Judgment Standard**

Summary judgment will be granted when "there is no
genuine issue as to any material fact and . . . the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 585-87 (1986).  Accordingly, the court's task is not to
"weigh the evidence and determine the truth of the matter but to
determine whether there is a genuine issue for trial."  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Summary
judgment is inappropriate if, resolving all ambiguities and
drawing all inferences against the moving party, there exists a
dispute about a material fact "such that a reasonable jury could
return a verdict for the nonmoving party."  Id. at 248-49 (citing
Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970)); accord
Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir.
1991).

To defeat a motion for summary judgment, however, the
nonmoving party "must do more than simply show that there is some
metaphysical doubt as to the material facts."  Matsushita Elec.
Indus., 475 U.S. at 586.  There is no issue for trial unless

---

[3]     The parties agree in any event that the applicable
insurance law is materially the same in New York and Florida.

there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor.  Anderson, 477 U.S. at 249-50.  As the Court held in Anderson, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. (citations omitted).

### 2.  **Insurance Contract Interpretation**

Under New York law, the key to contract interpretation is "the parties' reasonable expectations."  Omni Berkshire Corp. v. Wells Fargo Bank, N.A., 307 F. Supp. 2d 534, 539-40 (S.D.N.Y. 2004) (quoting Sunrise Mall Assocs. v. Import Alley of Sunrise Mall, Inc., 621 N.Y.S.2d 662, 663 (2d Dep't 1995)).  To give effect to the parties' reasonable expectations, the court must "determine the parties' purpose and intent."  Sunrise Mall, 621 N.Y.S.2d at 663.  The starting point is the language of the contract or, in the case of insurance contracts, the language of the policy.  "Unambiguous provisions of an insurance contract, as with any written contract, must be given their plain and ordinary meaning and the interpretation of such provisions is a question of law for the court."  Mazzuoccolo v. Cinelli, 666 N.Y.S.2d 621, 622-23 (1st Dep't 1997) (internal citations omitted); see Uniroyal, Inc. v. Home Ins. Co., 707 F. Supp. 1368, 1374 (E.D.N.Y. 1988) ("[i]f the policy is unambiguous, its interpretation is strictly a question of law for the court").  Where, however, an insurance policy is ambiguous, the ambiguity is to be construed against the insurer and the Court may look to extrinsic evidence to ascertain the intent of the parties.  See

Andy Warhol Found. for Visual Arts, Inc. v. Federal Ins. Co., 189
F.3d 208, 215 (2d Cir. 1999); Lavanant v. General Accident Ins.
Co., 584 N.Y.S.2d 744, 747 (1992); Japour v. Ed Ryan & Sons
Agency, 625 N.Y.S.2d 750, 751-52 (3d Dep't 1995).  Thus, the
threshold question for this Court is whether the Policy is
ambiguous.

          An insurance contract is considered ambiguous where its
terms are reasonably susceptible to more than one interpretation.
See Andy Warhol, 189 F.3d at 215; State of New York v. Home
Indem. Co., 495 N.Y.S.2d 969, 971 (1985).  In contrast,
"[c]ontract language is not ambiguous if it has 'a definite and
precise meaning, unattended by danger of misconception in the
purport of the [contract] itself, and concerning which there is
no reasonable basis for a difference of opinion.'"  Hunt Ltd. v.
Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989)
(quoting Breed v. Insurance Company of North America, 413
N.Y.S.2d 352, 355 (1978)).  Moreover, "[l]anguage whose meaning
is otherwise plain does not become ambiguous merely because the
parties urge different interpretations in the litigation.  The
court is not required to find the language ambiguous where the
interpretation urged by one party would 'strain[] the contract
language beyond its reasonable and ordinary meaning.'"  Hunt, 889
F.2d at 1277 (quoting Bethlehem Steel Co. v. Turner Constr. Co.,
2 N.Y.2d 456, 459 (1957)).

          If the language of a contract is ambiguous, extrinsic
evidence of the parties' intent is admissible.  Andy Warhol, 189
F.3d at 215; Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d

425, 428 (2d Cir. 1992); Space Imaging Europe, Ltd. v. Space
Imaging L.P., 38 F. Supp. 2d 326, 334 (S.D.N.Y. 1999).  The
primary objective in contract construction is "to give effect to
the intent of the [contracting] parties as revealed by the
language they chose to use." Bourne v. Walt Disney Co., 68 F.3d
621, 629 (2d Cir. 1995) (citation omitted).  To determine intent,
the court should look to the contract as a whole and the parties'
conduct, as well as any evidence of surrounding facts and
relevant circumstances, industry custom and practice, and course
of dealing.  Id. at 627-29; United States Naval Inst. v. Charter
Communications, Inc., 875 F.2d 1044, 1048-49 (2d Cir. 1989)
(citing New York cases); Space Imaging, 38 F. Supp. 2d at 334;
Record Club of America, Inc. v. United Artists Records, Inc., No.
72 Civ. 5234 (WCC), 1991 WL 73838, at *8, 9 (S.D.N.Y. Apr. 29,
1991).  Insurance policies are read "in light of 'common speech'
and the reasonable expectations of a businessperson." Belt
Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 383 (2003)
(quoting Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co., 60 N.Y.2d
390, 398 (1983)).

Summary judgment "is clearly permissible when the
language of the contract provision in question is unambiguous."
Nycal Corp. v. Inoco PLC, 988 F. Supp. 296, 298 (S.D.N.Y. 1997)
(citing inter alia Mellon Bank, N.A. v. United Bank Corp. of
N.Y., 31 F.3d 113, 115 (2d Cir. 1994)), aff'd, 166 F.3d 1201 (2d
Cir. 1998).  Summary judgment is also appropriate, however,

> when the language is ambiguous and there is
> relevant extrinsic evidence, but the
> extrinsic evidence creates no genuine issue

of material fact and permits interpretation
of the agreement as a matter of law.

Id., 988 F. Supp. at 299; see also Chock Full O'Nuts Corp. v.
Tetley, Inc., 152 F.3d 202, 204 (2d Cir. 1998) (holding that
"[n]otwithstanding the existence of contractual ambiguities,
summary judgment may be granted if . . . [the non-movant fails]
to show that there is any issue of material fact for trial;
however the ambiguity were resolved, the movant would prevail").

## C.  **Application**

There are three inquiries.  The first is whether the
"Property More Specifically Insured" provision of the Albany
Policy is ambiguous.  As I conclude as a matter of law that it is
ambiguous, the second inquiry is to determine, taking into
account the language of the provision and any relevant extrinsic
evidence, what the parties intended with respect to this
provision.  Finally, the third inquiry is whether the provision,
as interpreted in accordance with the parties' intent, bars
Glassalum from recovery in this case.  I address each inquiry in
turn.

### 1.  **The Provision is Ambiguous**

Here, the "Property More Specifically Insured"
provision of the Albany Policy is ambiguous, for it does not
define the terms "other insurance" or "more specifically
insured."  See, e.g., Omni Berkshire, 307 F. Supp. 2d at 540
(holding agreement ambiguous because it leaves key terms
undefined); Uniroyal, 707 F. Supp. at 1382-83 (differing terms of
the definition of "occurrence" render term ambiguous); Foy v.

<u>D.B. Frame Shop. Ltd.</u>, 620 N.Y.S.2d 356 (1st Dep't 1994)
(affirming denial of insurance company's motion for summary
judgment because "loss" is not defined in contract); <u>OTC</u>
<u>International, Ltd. v. All Those Underwriters at Lloyd's of</u>
<u>London Subscribing to Policy of Insurance Numbered HN99ABXC255</u>,
No. 32209/01, 2004 WL 235191, at *2 (Sup. Ct. Jan. 29, 2004)
(holding insurance contract ambiguous because it failed to define
"loss" or "occurrence").

        Indeed, the terms do not have a definite and precise
meaning.  The phrase "other insurance" arguably could mean other
insurance policies under which Glassalum is insured or simply any
other insurance policy.  Similarly, the phrase "more specifically
insured" arguably could mean the property in question must be
specifically listed in another policy or that it merely be
covered by another policy that is more specific in some other
way.  Accordingly, to ascertain the intent of the parties, I
consider not only the language of the Albany Policy, but also
extrinsic evidence.

### 2. <u>The Parties' Intent</u>

        There is little in terms of extrinsic evidence.  The
"Property More Specifically Insured" provision is a pre-printed
form that was not altered or discussed by the parties during the
procurement of the Albany Policy.  (Pilea Dep. at 13-15).  Thus,
there was no explicit expression of the parties' intent as to
this provision when the Albany Policy was procured.  There is,
however, other evidence that is not in dispute as to what the
parties intended.  The language of the provision, the purpose of

the provision, and the reasonable expectations of the parties lead to but one conclusion -- the parties intended, by the "other insurance" provision, that Glassalum would be covered by the Albany Policy unless the loss was also covered for Glassalum's benefit by other insurance more specifically intended to cover the property in question.

### a.  <u>The Language of the Provision</u>

The language of the provision makes clear that it applies when there is overlapping insurance -- when the loss is covered under not just one, but two (or more) policies.  This is confirmed by the second sentence, which states that even where there is other "more specific" insurance, coverage is provided for any excess in the loss not covered by the other insurance. (<u>See</u> Ruff Aff. Ex. A at A0634).  The language also implicitly states that the provision applies when the insured is receiving the benefit of the other "more specific" insurance.  In other words, the provision implicitly states that Albany will cover the "excess" -- the loss not covered for the benefit of the insured by the "other insurance."

In light of the context, the words "other insurance" surely refer to other insurance that names Glassalum as the insured.  The Second Circuit, in dicta, described "other insurance" provisions in insurance policies as "coverage that is not applicable if the <u>insured</u> has other insurance that provides coverage."  <u>RLI Ins. Co. v. Hartford Accident & Indemnity Co.</u>, 980 F.2d 120, 122 (2d Cir. 1992) (emphasis added).  The Second Circuit warned about the "danger" of insurance companies

"invok[ing] [other insurance clauses] in an attempt to deny all
responsibility for coverage." Id. A leading treatise describes
"other insurance" as "the situation in which two or more policies
of insurance cover the same risk in the name of, or for the
benefit of, the same person." See Barry R. Ostrager & Thomas R.
Newman, Handbook on Ins. Coverage Disputes § 11.01 (12th ed.
2004) (citing cases) (emphasis added). Other federal cases
addressing similar provisions have involved an insured's
competing policies. See, e.g., Continental, 974 F. Supp. at 372
(action brought seeking apportionment of loss between two
separate insurance policies issued to one insured); Texas City
Terminal Railway Co. v. Am. Equitable Assurance Co. of N.Y., 130
F. Supp. 843, 848 (S.D. Tex. 1955) (same).

Albany's interpretation that "other insurance" refers
to any other insurance that covers the property in question,
regardless of whether the particular insured would benefit, makes
no sense. If Albany's interpretation were accepted, an insured
would have no idea whether a particular piece of property was
covered under its policy if the policy contained an "other
insurance" provision that referred to any and all other
insurance, even insurance not benefitting the insured. "It is
not the responsibility of the insured to guess whether certain
[property] will or will not be covered based on nonspecific and
generic words or phrases that could be construed in a variety of
ways." Nat'l Union v. Am. Reinsurance, 351 F. Supp. 2d 201, 208
(S.D.N.Y. 2005) (applying Ohio law) (quoting Andersen v. Highland
House Co., 757 N.E.2d 329, 332 (Ohio 2001)). See also RFI, 980

F.2d at 122 (discussing Connecticut's holdings that "other insurance" provisions may be upheld "as long as their enforcement does not compromise coverage for the insured") (citing Aetna Casualty & Surety Co. v. CNA Ins. Co., 221 Conn. 779, 783 (1992). If Albany intended "other insurance" to mean any other insurance, regardless whether its own insured were left without coverage, it certainly had an obligation to spell this out in its policy.

Moreover, the provision excludes coverage for "property which is more specifically insured . . . by any other insurance." Those words suggest that the property must be specifically enumerated in another policy. See Continental Ins. Co. v. Acadia Ins. Co., 974 F. Supp. 371, 374 (D. Vt. 1997) ("[T]he few cases that have dealt with [Property More Specifically Insured" provisions] at all have held it to be satisfied only when a particular piece of property is specifically enumerated in a policy.") (citing cases). Here, the property was not specifically enumerated in the American Home Policy. The American Home Policy insured 3 Times Square for "all materials, equipment, machinery and supplies of any nature whatsoever, to be used in . . . [the] completion of the Project." (Def.'s 56.1 Statement Ex. 8 at 4). It did not specifically enumerate the glass curtain wall panels held by Glassalum in Florida for the Project.

Accordingly, the words of the other insurance provision, reasonably construed, can mean only that the parties intended that Glassalum would be covered unless Glassalum's loss

was also covered, for Glassalum's benefit, by another policy more specifically intended to cover the loss in question.

      b.    **The Purpose of the "Property More Specifically Insured" Provision**

      The purpose of the "Property More Specifically Insured" provision was to ensure that if Glassalum were entitled to coverage for a particular loss under another policy that more specifically covered the loss, Glassalum would look to the other insurance first, and Albany would cover any excess. The purpose of this provision was not to serve as a means for Albany to deny Glassalum all coverage. Rather, the provision addresses the priority of coverage where two or more insurance companies provide Glassalum with overlapping coverage.

      The Guiding Principles support this interpretation. The Guiding Principles, which Albany considered and purported to rely on, do not define the parameters of coverage between an insurance company and its insured. Rather, the Guiding Principles define coverage as between different insurance companies with overlapping policies. The Guiding Principles show that the purpose of the "other insurance" provision is to determine which of two insurance companies should pay where both policies cover a loss. They are not a mechanism for an insurance company to deny coverage on a claim that is otherwise covered, especially where, as here, the insured would be left without any coverage. <u>See</u> <u>RFI</u>, 980 F.2d at 122. The purpose of the

provision would be thwarted if the provision were used as a basis for denying an insured of any and all coverage.

      c.   **<u>The Reasonable Expectations of the Parties</u>**

Glassalum manufactures and installs glass curtain wall panels -- such as the ones at issue here -- intended for buildings and high-rise apartments. (Def.'s 56.1 Statement ¶ 2). Glassalum procured the Albany Policy precisely to cover risks similar to the one presented here, where its property (or property it was holding in temporary storage) was damaged by a hurricane while on its premises. There is no real dispute that the Albany Policy <u>specifically</u> insured property temporarily stored at Glassalum's site, and that Glassalum procured the Albany Policy in part to insure property such as that stored for the Project. (<u>See</u> Anderson Dep. at 80). Both Albany and Glassalum surely expected that damage to glass curtain wall panels manufactured by Glassalum for a project squarely within Glassalum's principal line of business would be covered by the Albany Policy.

The "Property Not Covered" section of the Albany Policy excludes coverage for, <u>inter</u> <u>alia</u>, animals, crops, exports and imports, airborne or waterborne property. Thus, the reasonable expectations of the parties was that losses outside the normal business of Glassalum would not be covered based on this section of the Albany Policy. The "Property More Specifically Covered" provision is included in this section for precisely this reason, so that Glassalum would look to other insurance to the extent the

other insurance was procured to cover particular property or peril more specifically than the Albany Policy. See Continental, 974 F. Supp. at 372 (discussing other more specific insurance policies such as boiler and machinery policies procured to cover specific property or risk). Here, Glassalum's claim is not for damage to animals or crops or airborne property, but for damage to property squarely within its normal and regular business.

In addition, the curtain wall panels of the type at issue here are manufactured for specific buildings and construction projects and hence they are likely always to be covered by other insurance. Surely, the parties could not have reasonably expected that the Albany Policy would not cover merely because of the existence of these other policies. Therefore, the reasonable expectations of the parties supports Glassalum's position -- that the "other insurance" provision was intended to bar recovery only if Glassalum were protected by another policy and that other policy more specifically insured the loss in question.

### 3. The Other Insurance Provision is Not a Bar

Construed in the only way in which it can be reasonably construed, the "other insurance" provision does not bar recovery here. There was no overlapping insurance. There was no insurance other than the Albany Policy for Glassalum to look to

for coverage.[4]  Thus, the provision does not bar Glassalum's
claim.  It would be unreasonable for Glassalum to be found to
have no coverage based on a provision that applies only when
there is overlapping coverage.  In other words, it would be
highly unjust to deprive Glassalum of any and all coverage based
on a provision that is to be invoked only when there is double
coverage.

Finally, no reasonable factfinder could conclude that
the American Home Policy was "more specific" than the Albany
Policy.  The American Home Policy is arguably more specific in
that it covers property at the Project, but it is less specific
in that it does not specifically mention Glassalum or property in
the custody or control of Glassalum.  In contrast, the Albany
Policy is more specific in the sense that it covers Glassalum's
property and property stored at Glassalum's premises for
Glassalum's customers.[5]

---

[4]     It was not for lack of effort, as Glassalum attempted
to seek coverage under the American Home Policy after initially
having its claim denied by Albany.  Glassalum was not named as an
insured under the American Home Policy and American denied its
claim.

[5]     Even if a jury could find that Albany's construction
and application of the "Property More Specifically Insured"
provision was reasonable, summary judgment would still be granted
to Glassalum.  For Albany to prevail, the trier of fact would
have to find Albany's construction of the "Property More
Specifically Insured" provision to be the "sole construction
. . . fairly placed upon the words employed."  Uniroyal, 707 F.
Supp. at 1376-77 (quoting Cantanucci v. Reliance Ins. Co., 349
N.Y.S.2d 187, 191 (3d Dept.), aff'd mem., 35 N.Y.S.2d 890
(1974)).  This is because the rule of contra perferentem creates
a presumption in favor of the insured.  Given at least two
reasonable interpretations, the ambiguity must be resolved in
favor of the insured.  See id. at 1377 ("The Court must do its

Extrinsic evidence creates no issue of material fact. The only reasonable interpretation of the provision leads to the conclusion that the Albany Policy covers Glassalum's claim. Glassalum's motion for summary judgment for a declaratory judgment that Albany must pay Glassalum's claim for damage to the curtain wall panels is granted. Albany's cross-motion in this respect is denied.

### 3. <u>Glassalum Cannot Recover Consequential Damages</u>

Glassalum seeks consequential damages from Albany arising from its refusal to pay Glassalum's claim. New York law is unsettled on the "specific issue of whether or under what circumstances a policyholder can obtain consequential damages stemming from an insurer's breach of an insurance policy." <u>Hold Bros., Inc. v. Hartford Cas. Ins. Co.</u>, 357 F. Supp. 2d 651, 656 (S.D.N.Y. 2005). Assuming an insured can recover consequential damages, the insured must show that such damages "were within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." <u>Id.</u> at 658 (quoting <u>Kenford Co. v. County of Erie</u>, 73 N.Y.2d 312 (1989)). Here, the "consequential damages" Glassalum seeks are the attorneys' fees and costs associated with the defense of its subrogation action against American Home. Glassalum, however, has not argued or submitted any evidence that the parties contemplated

_____

best to make sense of the ambiguity, construing it against the insurer . . . ."). I conclude that no trier of fact could reasonably find that Albany's interpretation of the provision at issue is the only reasonable interpretation.

consequential damages when the Albany Policy was issued.  The
only argument it makes is that Albany is guilty of extreme bad
faith in its denial of Glassalum's claim.  As Glassalum concedes,
New York does not recognize bad faith claims for denial of
insurance coverage.  (See Pl.'s Mem. at 22).  See also New York
Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 324 (1995).

Thus, Albany's motion for summary judgment dismissing
Glassalum's claims for consequential damages is granted and
Glassalum's cross-motion for summary judgment on this claim is
denied.

### 4.  **Glassalum's Other Claims**

Glassalum's complaint seeks relief under unjust
enrichment and contract reformation theories.  In its moving
papers, however, it does not argue or provide evidence or support
for either of these theories.  These claims are dismissed as
abandoned.  In addition, as the Court concludes that Albany
wrongly denied Glassalum's claim for damages, its claims in the
complaint based on unjust enrichment or contract reformation are
alternatively dismissed as moot.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for
summary judgment for a declaratory judgment that defendant is
obligated to cover the claim for damage to the curtain wall
panels is granted, and defendant's cross-motion is denied.
Plaintiff's motion for summary judgment seeking consequential
damages as a result of defendant's denial of plaintiff's claim is

- 26 -

denied and defendant's cross-motion is granted.  Plaintiff's
additional claims seeking recovery under an unjust enrichment or
reformation theory are dismissed.  Plaintiff shall submit a
proposed judgment, on notice, within five days hereof.  Costs to
plaintiff.

        SO ORDERED.

Dated:    New York, New York
          May 20, 2005

                                    _____
                                    DENNY CHIN
                                    United States District Judge